Margaret N. O'Leary et al., Landlords, Appellants, *v.* Nicholas C. Hallies, Tenant, and Raymond Brost et al., Undertenants, Respondents.

Supreme Court, Appellate Term, First Department, March 16, 1950.

*Abraham Nayowitz* and *Leon London* for appellants.

*Joseph A. Muccia* for respondents..

Hammer, J.  The petition alleges that the premises are occupied for business purposes and that the tenant entered into pos-

session of said premises and still occupies the same as a statutory tenant; that on the first day of November, 1949, there was due the landlords $471.50 for rent for October and November plus $6.84 plate glass insurance, $24 for water from August 24 to November 15, 1949; that the rent has been demanded personally from the tenant, that the tenant has defaulted in payment, and the tenant and undertenants hold over without permission.

The tenant defaulted on the trial.

The undertenants Brost and Farrell deny all the allegations of the petition except the allegations of ownership and of the tenancy and subtenancies; plead that the landlords had knowledge and notice of their subtenancies and consented thereto and further plead that they had tendered to the landlords the rent they were paying to the tenant, and also tendered the fair and reasonable value to the landlords of the space they occupied, which tenders were refused.

The demised premises are " the space known and described as the corner store and basement space under said store in the building known as 502 Ninth Avenue."

By the terms of the lease (par. 2) " the tenant will not sell, assign, or mortgage this lease, or any part thereof or of the term hereby granted, underlet the whole or any part of the premises without the landlords' written consent * * * ", and (par. 39) " Anything herein to the contrary notwithstanding, it is understood and agreed that the tenant may sublet the space now partitioned as a stand on West 38th Street for any lawful business * * *."

In the landlords' reply brief it is further stated that the owner of the premises is willing to accept the subtenants in their illegal tenancy provided that they pay the entire rent due or take over the entire premises.

The subtenants, as already stated, claimed they were entitled to retain possession so long as they paid to the landlords the rents payable by them to the tenant, and the justice sustained their contention. See opinion below.

It appears that the Brost subtenants occupy the sidewalk stand plus a space twelve feet wide by four feet deep which formerly constituted the entire show window, plus all of the basement except the front portion of the basement reserved by the tenant Hallies, and the four foot by twelve foot portion occupied by the subtenant Farrell and the boiler room, and that the main tenant retained the balance of the store and a part of the front cellar. According to the landlords none of the spaces are partitioned off except the show window. The cellar space is just

part of the open cellar. As to the partitioning, respondents state that in the more valuable store space Brost's premises are "completely sub-divided and partitioned off from the remainder of the store", and "in any event there is not one iota of evidence that the respective spaces cannot be partitioned."

In *214 West 39th St. Corp.* v. *Miss France Coats, Inc.* (274 App. Div. 597, 599, 600) the court says: " If the main tenant is no longer to be regarded as the tenant of the entire demised premises, how can he sign a renewal lease in the absence of an emergency rent for the smaller space? Then, too, in the case where there are multiple subtenants with whom the landlord has no privity, can it be said that the statute thrusts upon a landlord in substitution for a single tenancy of the entire premises, two or more tenancies for subdivided rental units? * * * If we were to adopt the theory of plaintiff here, it might in many cases be utterly impossible to require a subtenant to attorn to a landlord with whom he had no contractual relationship, particularly where the subtenant has arranged for ingress and egress through the tenant's retained space or for the furnishing by the tenant of such facilities as stenographic and telephone services or the right to the use of tenant's equipment."

In *City Textile Print. Corp.* v. *Zenith Grainer & Litho Equipment Corp.* (275 App. Div. 800) cited by the Trial Judge — which seems to be the latest pertinent decision of the appellate court — it is said: " Landlord-appellant's predecessor in title leased the westerly portion of the ground floor of the building at 336 East 28th Street, Borough of Manhattan, City of New York, to a tenant which occupied part of the demised premises for its own purposes and, before the termination of the lease, sublet the balance of said rental area to undertenants. The term of the lease has now expired, the tenant has surrendered possession of the part of the demised premises, which it occupied, and the landlord-appellant seeks to evict the undertenants. The undertenants-respondents are entitled to the protection of the Commercial Rent Law (*Tighe* v. *Sinclair Refining Co.,* 274 App. Div. 22), and we think that this is true notwithstanding that said undertenants occupy but a portion of the entire rental area. The attorney for the undertenants-respondents upon the argument expressed a willingness on the part of his clients to absorb the entire rental area at the same rental previously charged for the entire space and, in any event, the court should readily be able to apportion a correct rental to the part of the rental area now occupied by the undertenants."

In this case, contrary to the position taken by the subtenants in the *City Textile* case (*supra*), respondents refuse " to absorb the entire rental area at the same rental previously charged for the entire space ", and the space here is not apportionable.

Section 13 of the Business Rent Law (L. 1945, ch. 314), as amended by chapter 535 of the Laws of 1949, provides: " the provisions of any lease for a term of more than three years, in force since on or before June first, nineteen hundred forty-four, wherein the rental stipulated is in a graduated scale, shall determine the rents payable during the term of such lease notwithstanding the subsequent modification of any of its terms; and upon the expiration of such lease, the emergency rent shall be a reasonable rent to be fixed by agreement, by arbitration, or by the supreme court upon the basis of the rent charged for the most nearly comparable business space in the same building or other rental area, or other satisfactory evidence, at the time of such agreement, or on the date the application to the supreme court or submission to arbitration is made. Pending the fixation of such reasonable rent, without prejudice to their respective rights, the tenant shall pay and the landlord may accept rent upon the basis charged during the last month of the expired lease."

It would seem that at the termination of the first, graduated lease the tenant was no longer a tenant at a graduated rental under the emergency statute — in other words, the graduated lease then ended; thereafter, throughout the three-year extension, his status was that of a tenant at the fixed, monthly rental of $205; so that the landlord was entitled to collect that amount, the rent on the freeze date, plus 15%. No question was raised on the trial as to the fairness of the rent, the sole objection in that regard being that it was not the reasonable rent, fixed as provided by section 13 of the Business Rent Law.

Fixation of the statutory amount to be paid by the tenant as rent is not a judicial but a legislative act, not reviewable by the court, and upon the facts presented here the effect of the final order would be to deprive the landlords of their rights under the business emergency statute (*Wasservogel* v. *Meyerowitz,* 300 N. Y. 125).

The final order and judgment so far as appealed from should be reversed, with $30 costs, and final order and judgment directed in favor of the landlords against the tenant and undertenants for nonpayment of $502.30, rent due, with interest and costs, with leave to respondents within eight days after service of order entered hereon, to pay said sum.

EDER, J. (dissenting). The landlords instituted this proceeding against the tenant and undertenants to recover possession for nonpayment of rent. The tenant defaulted; the undertenants defended, and after trial the petition was dismissed as to them and landlords appeal.

The demised premises which were let to the tenant (Hallies) comprise a corner store and basement space under the store.

The undertenant Brost occupies a space four feet deep, twelve feet high and twelve feet wide, completely partitioned off from the remainder of the store, and half the entire cellar, which is not partitioned from the rest of the basement.

The undertenant Farrell occupies a portion of the cellar space four feet by twelve feet, to the left, beyond the stairs.

Upon the trial the basic issue litigated was whether the undertenants were required to pay the full rent for the entire space, which the main tenant was obligated to pay under the lease, or only the rent for the space occupied by each undertenant.

The court below wrote an opinion, reaching the ultimate conclusion that the undertenants could continue in possession upon paying the emergency rent.

I am in accord with this view and conclusion. In *Tighe* v. *Sinclair Refining Co.* (274 App. Div. 22) it was held that a subtenant in possession of entire demised premises, who was willing to absorb the whole rental area and was willing to make a lease or rental agreement called for by the statute, was protected by the emergency rent law and could not be evicted even though the main tenant had consented to the entry of a final order awarding the landlord possession. It reiterated that holding in *Hall Realty Co.* v. *V. A. C. Corp.* (275 App. Div. 213) again citing the *Tighe* case (*supra*). It left undecided, in the *Tighe* case, the question whether a subtenant willing only to continue occupancy of his own space, paying the emergency rent for that space alone, was protected by the emergency rent laws.

In *City Textile Print. Corp.* v. *Zenith Grainer & Litho Equipment Corp.* (275 App. Div. 800) the court extended its holding to include subtenants occupying only a portion of the entire rental area, saying: "The undertenants-respondents are entitled to the protection of the Commercial Rent Law (*Tighe* v. *Sinclair Refining Co.*, 274 App. Div. 22), and we think that this is true notwithstanding that said undertenants occupy but a portion of the entire rental area."

In *Brause* v. *Parisi* (274 App. Div. 469, affd. 299 N. Y. 585) it was held that subtenants who had tendered rent due for resi-

dential space constituting a portion of a building leased for both residential and commercial purposes, were entitled to protection under the local emergency rent law, even though the main tenant as lessee of the entire building had defaulted in the payment of rent. There, the landlords also claimed that they were entitled to the payment of the full reserved rental for the entire premises, or possession of the entire building.

The cases cited establish the same principle as applied to business, commercial and residential space, viz., that undertenants are entitled to continue in possession of their space and are not required to absorb the entire rental area at the same rent previously charged to the tenant for the entire space demised.

The undertenants have offered to pay their fixed and emergency rentals formerly paid to the tenant Hallies or the reasonable rent for the space they occupy — the rent fixed by the court or by agreement or any other method, as long as it is fixed in the proper way, but this the landlords have refused, insisting they are entitled to the full rent which the main tenant was obligated to pay for the entire premises.

Under the cases cited the premise upon which the landlords proceed is an untenable one.

Landlords contend, also, that the undertenants must pay the rent for the entire premises demised to the tenant, as they are not possible of being physically subdivided from the entire premises — that here the spaces demised to the undertenants are not separable from the whole.

I do not find this claim supported by the record. Undertenant Brost occupies a sidewalk stand, plus a space twelve feet wide by four feet deep, which it is said formerly constituted the entire show window, plus all of the basement, except the front portion of the basement reserved by the main tenant, Hallies, and a four foot by twelve foot portion of the basement occupied by undertenant Farrell.

The show window, admittedly, is partitioned off; the undertenants' basement spaces are not partitioned off.

I fail to see why this makes the premises incapable of subdivision as to a rental charge. If physical subdivision is necessary to apportion a correct rental to the part of the area now occupied by the undertenants, this should be easily ascertainable and such a suggestion is indicated in the *City Textile* case (*supra*). If the cellar is partitioned, access to each portion thereof may be had by the simple act of putting in a door in the partition leading to each portion of the cellar.

I am of opinion the appeal is an untenable one and vote to affirm the final order appealed from.

HECHT, J., concurs with HAMMER, J.; EDER, J., dissents in opinion.

Final order and judgment reversed, etc.